IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD HERSHEY,

    Plaintiff,

v.                                                   Case No. 2:16-cv-2251-JTM

KANSAS CITY KANSAS COMMUNITY COLLEGE;
DERYL W. WYNN, *in his official capacity as Chief Compliance Officer of Kansas City Kansas Community College, and in his individual capacity;*
DR. JONATHAN LONG, *in his official capacity as Dean of Students of the Kansas City Kansas Community College, and in his individual capacity;*
WENDELL MADDOX, *in his official capacity as a Member of the Kansas City Kansas Community College Board of Trustees;*
CATHY BREIDENTHAL, *in her official capacity as a Member of the Kansas City Kansas Community College Board of Trustees;*
DONALD ASH, *in his official capacity as a Member of the Kansas City Kansas Community College Board of Trustees;*
JOHN RIOS, *in his official capacity as a Member of the Kansas City Kansas Community College Board of Trustees;*
RAY DANIELS, *in his official capacity as a Member of the Kansas City Kansas Community College Board of Trustees;*
CLYDE TOWNSEND, *in his official capacity as a Member of the Kansas City Kansas Community College Board of Trustees;* and
MARY ANN FLUNDE, *in her official capacity as a Member of the Kansas City Kansas Community College Board of Trustees,*

    Defendants.

**MEMORANDUM AND ORDER**

Plaintiff filed this action under 42 U.S.C. § 1983 claiming the defendants are depriving him of First Amendment rights. He alleges the defendants have arbitrarily denied his requests to use the upper level lobby and hallways of Jewell Hall, a building on the Kansas City Community College campus, to distribute leaflets and display videos advocating a vegetarian lifestyle. (Dkt. 1). The matter is now before the court on defendants' motion to dismiss the complaint (Dkt. 20) and plaintiff's motion for a preliminary injunction (Dkt. 5). For the reasons discussed herein, the motion to dismiss is granted in part and denied in part, and the motion for preliminary injunction is denied.

**I. Summary of complaint.**

The following allegations are taken from the complaint. Plaintiff is a vegetarian advocate who spends time on college campuses distributing booklets and showing short videos about a vegetarian lifestyle. He is compensated by not-for-profit organizations and receives grants for his work. For a period of years beginning in 2010, he engaged in such advocacy at the Kansas City Kansas Community College (hereinafter "the College"), primarily "in the hallways and upper level lobby area of Jewell Hall."

Plaintiff alleges that the College holds the hallways and upper lobby of Jewell Hall open to speech by the general public on a variety of issues, and that these areas constitute a designated non-traditional public forum for the exercise of First Amendment rights.

In 2010, the Vice President of Student Services at the College wrote plaintiff and others to welcome them to conduct advocacy in the hallways of campus buildings as long as they checked in with the Campus Police upon arrival. Plaintiff has always checked-in as requested. In October 2013, plaintiff arranged with the same Vice President to use tables so he could present videos to students, using portable DVD players with headphones and privacy screens. In 2013, the Dean of Student Services, Dr. Jonathan Long, allowed plaintiff to offer video viewings from tables and chairs in the hallway across from the Student Services office on the upper level of Jewell Hall. On November 5, 2013, plaintiff and an assistant presented videos to about 73 students and distributed over 400 booklets without disrupting nearby classrooms or College operations.

On January 14, 2015, plaintiff petitioned Long to use tables for two weeks beginning January 28, in the same location as before. Despite calling the College, plaintiff received no response, prompting him to petition Long again on January 26, this time asking for the same table arrangement for February 2. On January 27, Long responded by stating that plaintiff's request would be granted subject to the following limitations: it would be for a two-hour period, in the lower level of Jewell, and only on February 4. Plaintiff had not requested the date of February 4 and would be out of town that day. On January 28, plaintiff again requested that he be allowed to use the tables on February 2, for about eight hours, in the same location as before. Long denied plaintiff's request on January 28. Plaintiff went to the College on February 2 and met with officials

in an attempt to persuade them to let him use the area. While he was there, he saw that the upper level of Jewell Hall was not in use.

When one of plaintiff's grantors found out what had happened, it informed him it was denying all of his pending and future grant requests.

On March 30, 2015, plaintiff petitioned Dr. Long's supervisor, Dr. Michael Vitale, the Vice President of Academic Services, for permission on April 7 to use the same location he had used before. On April 1, 2015, the College's Chief Compliance Officer and Legal Counsel, Deryl Wynn, denied the request, explaining after the fact that he did so because there were multiple activities scheduled for the requested date. On April 7, plaintiff petitioned Wynn for permission to use the space on any other day of the week of April 7. On April 10, plaintiff petitioned to use the space on April 15. Wynn did not respond to either of these petitions.

On September 15, 2015, plaintiff emailed Wynn and other College officials asking for permission to offer videos and distribute literature on September 22, using tables in the same location as before. Long denied the request on September 18.

Plaintiff wants to distribute his materials in the same area he used previously. He alleges that the College has no standards for approving or denying requests to use College facilities for expressive activities, but instead vests absolute discretion in its officials, which "amounts to viewpoint and subject matter discrimination on an ad hoc basis." He alleges the College arbitrarily and capriciously denied his petitions under color of state law and thereby deprived him of First Amendment rights. He contends he lost income and suffered other damages as a result.

4

Plaintiff prays for a declaratory judgment finding that the First Amendment protects his right to use the area in upper Jewell Hall for the distribution of booklets and video screenings. He seeks injunctive relief preventing defendants from interfering with these First Amendment rights. He seeks compensatory damages and fees and costs, including attorney's fees.

**II. Standards governing motion to dismiss – Rule 12(b)(6).**

A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff for purposes of determining whether the complaint states a plausible claim for relief. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir.2009). *See Cunningham v. Wichita State Univ.*, No. 6:14-CV-01050-JTM, 2014 WL 4542411, at *2 (D. Kan. Sept. 12, 2014), *aff'd*, 613 F. App'x 758 (10th Cir. 2015).

**III. Discussion.**

A. *First Amendment claim*.

"To determine when and to what extent the Government may properly limit expressive activity on its property, the Supreme Court has adopted a range of constitutional protections that varies depending on the nature of the government

5

property, or forum." *Verlo v. Martinez*, 820 F.3d 1113, 1129 (10th Cir. 2016). One such property is a "designated public forum," which is government property that has not been traditionally regarded as a public forum, but which is intentionally opened up for that purpose. *Id*. As far as the instant motion is concerned, defendants do not challenge plaintiff's allegation that the area of upper Jewell Hall he wants to use is a designated public forum. Dkt. 21 at 10. [1]

The government may impose reasonable time, place and manner regulations on the use of a designated public forum, provided the restrictions: 1) are content-neutral; 2) are narrowly tailored to serve a significant government interest; and 3) leave open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1131 (10th Cir. 2012) (citations omitted). If the government imposes content-based restrictions, they must be narrowly drawn to effectuate a compelling governmental interest. *Perry*, 460 U.S. at 45; *Verlo*, 820 F.3d at 1131. *See also Doe*, 667 F.3d at 1131 (*quoting United States v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.")).

Defendants first argue that plaintiff fails to state a claim for deprivation of First Amendment rights because he does not allege "any facts supporting his conclusory

---

[1] By contrast, a "limited public forum" exists where the government has reserved an area for certain groups or for the discussion of certain topics. In a limited public forum, the government may exclude speech if it is inconsistent with the purpose of the forum. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). *See also Gilles v. Garland*, 281 F. App'x 501, 511 (6th Cir. 2008) (following "great weight of authority" finding open areas on public university campus to be limited public forums).

6

statement that there was no governmental interest in Defendants Long or Wynn's decisions to deny his requests." Dkt. 21 at 10. Defendants further contend the allegation that defendants arbitrarily and capriciously denied plaintiff's petitions is "devoid of factual support." *Id*. at 11. They also contend the claim is deficient because plaintiff does not allege that the College's alternative proposal was inadequate or that plaintiff was treated differently than other individuals.

The court rejects these arguments. Plaintiff has adequately alleged factual support for his claim that no governmental interest was served by defendants' denial of his petitions to use upper Jewell Hall. He alleges facts indicating that his petitions to use the area were sometimes ignored (¶¶ 23, 24, 35, 36), on other occasions they were denied without explanation (¶¶ 28, 38), and on at least one occasion the College imposed seemingly arbitrary conditions without explanation (e.g., 2-hour permission, on a date not requested, in a different area) and denied his request to use upper Jewell Hall despite the fact that the area was not being used that day (¶ 30). Plaintiff has alleged facts indicating that the College's proposed alternative was inadequate because the time was too restricted and because it did not allow him to effectively reach students. He has alleged that his prior use of upper Jewell caused no disturbance or disruption in the College's operations. Plaintiff has also alleged that the College has no standards for approval or denial of requests to use facilities for expressive purposes, and that requests are judged on an ad hoc basis by officials with "absolute, standardless discretion." *Cf. City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 764 (1988) ("even if the government may constitutionally impose content-neutral prohibitions on a

7

particular manner of speech, it may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion").

Assuming the truth of plaintiff's allegations that the College has no standards for granting or denying petitions, that it does not otherwise set forth neutral time, place or manner restrictions, and that defendants denied several of his petitions without explanation or simply ignored them, plaintiff can hardly be faulted for failing to be more specific as to the absence of a governmental interest justifying denial of his requests. Plaintiff has alleged facts that could support a finding that his petitions have been denied under a practice or custom that grants unbridled discretion to College officials, that his petitions have been arbitrarily denied without furthering a governmental interest, and that his alternative channels of communication are inadequate. Drawing all reasonable factual inferences in plaintiff's favor, he has alleged a plausible claim for deprivation of his First Amendment rights under color of state law.[2]

B. *Official capacity claims*.

Defendants next argue that plaintiff's official capacity claims against the College must be dismissed because plaintiff has not alleged "that any of the denials by [College] officials, and more specifically by Defendants Long and Wynn, were based on the subject matter of Mr. Hershey's materials." Dkt. 21 at 16. Defendants further argue that

---

[2] Defendants do not argue that the College is not a "person" within the meaning of 42 U.S.C. § 1983 or that the actions of College officials were not taken under color of state law.

the claims are deficient because plaintiff does not allege "what role the Board of Trustees had in implementing policies for on campus distribution of materials." *Id*.

As plaintiff points out, he has alleged that he was denied access to a public forum "for unstated reasons, in accordance with no policy, and at the absolute discretion of College officials." Dkt. 1, ¶ 50. He alleges that the College "has no policy to specify any standards by which College officials approve or deny requests," and that the College "vests absolute, standardless discretion in College officials" to allow or deny requests to use facilities for expressive activities. *Id*. ¶¶ 41, 42. Additionally, he alleges that the Board of Trustees and defendants Long and Wynn were acting as policymakers for the College at all relevant times. Finally, plaintiff has spelled out how a municipal policy or custom – in this instance, the *absence* of any standards governing exercise of discretion on requests to use College facilities – caused the deprivation of First Amendment rights alleged in the complaint.

Because plaintiff has alleged that access to the public forum is based on "standardless discretion" of College officials, he need not show that he was discriminated against based on the content of his materials. "A government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (cite omitted). Government regulation of access to a public forum must have definite standards because "if the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the

9

danger of censorship and of abridgment of … First Amendment freedoms is too great to be permitted." *Id.* at 131 (internal quotation marks and citations omitted); *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981) (awarding space on a first-come, first-served basis "is not open to the kind of arbitrary application that this Court has condemned as inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.")

Plaintiff has also adequately alleged the existence of a municipal policy or custom giving rise to liability under 42 U.S.C. § 1983. A municipal policy may be shown by an informal custom amounting to a widespread practice that is so permanent and well settled as to constitute a custom or usage. *See Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). To withstand a motion to dismiss on such a theory, a plaintiff must allege: 1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the municipality's employees; 2) deliberate indifference to or tacit approval of such misconduct by the municipality's policymaking officials after notice to the officials of that particular misconduct; and 3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the custom, with the custom being the "moving force" behind the acts. *Gates v. Unif. Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993). Viewed in the light most favorable to plaintiff, the complaint alleges the existence of a persistent custom of vesting absolute discretion in College officials to grant or deny access to the public forum, knowledge of and tacit approval of the impermissible practice by College policymakers, and injury to plaintiff caused by

the custom. Defendants' motion to dismiss the claim against the College is therefore denied.

C. *Qualified immunity*.

Defendants Long and Wynn assert the defense of qualified immunity to the claim against them in their individual capacities. They challenge whether plaintiff has alleged the violation of a constitutional right and whether the right was clearly established at the time. Dkt. 21 at 18-19. The court has already determined above that plaintiff has properly alleged the violation of a constitutional right.

 Under § 1983, however, a public official is only liable for his own misconduct. Although plaintiff has alleged that Long and Wynn were "policymakers" for the College, and that each of them applied the policy on at least one occasion, plaintiff has not alleged or shown that Long and Wynn were personally responsible for the allegedly unconstitutional policy that caused his injury. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Long and Wynn may indeed each be a policymaker, but there is no allegation that either of them was responsible for or had final authority with respect to the College's policy on granting access. "[T]he authority to make municipal policy is necessarily the authority to make *final* policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Absent a showing that Long or Wynn had final policymaking authority, plaintiff has failed to show that they bear personal liability for the College's allegedly unconstitutional policy of giving officials unbridled discretion to grant or deny requests for access. *Iqbal*, 556 U.S. at 676 ("a

11

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Mason v. Wolf*, 356 F.Supp.2d 1147, 1162 (D. Colo. 2005) (individual who devised the regulation that was applied to plaintiff was "personally and centrally involved" in the violation); *Kanelos v. County of Mohave*, 893 F.Supp.2d 1001, 1009 (D. Az. 2012) (official could be liable because "he drafted and enacted" the unlawful policy). Accordingly, the court will grant the motion to dismiss the claims against Long and Wynn in their personal capacities.

### IV. Motion for preliminary injunction.

Plaintiff has moved for a preliminary injunction prohibiting the defendants from interfering with his alleged "right to engage in peaceable distribution of booklets in the hallways and lobby of upper Jewell and offer personal video screenings in the hallways of upper Jewell." Dkt. 6 at 7. Subsequent to the filing of the motion, defendants asserted that "[t]he location that the Plaintiff seeks to espouse his views is and has been under construction such that even if the Court were to entertain his request for injunctive relief the Defendants could not comply with any order compelling them to give Plaintiff access." Dkt. 22. Based on that assertion, which is supported by an affidavit, defendants moved for a stay of the proceedings until the court rules on the motion to dismiss. Although the request for stay is moot now that the court has ruled on the motion to dismiss, plaintiff's response apparently concedes that upper Jewell is currently under construction. Dkt. 23 at 12. Given the uncontested fact that the relief requested by the motion is currently precluded, the court will deny plaintiff's motion for a preliminary injunction, without prejudice to refiling the motion at a later date.

**IT IS THEREFORE ORDERED** this 17th day of February, 2017, that defendants' Motion to Dismiss (Dkt. 20) is GRANTED IN PART and DENIED IN PART. Plaintiff's claim against defendants Long and Wynn in their individual capacities is DISMISSED; defendant's motion to dismiss the claims is otherwise denied.

IT IS FURTHER ORDERED that plaintiff's Motion for Preliminary Injunction (Dkt. 5) is DENIED without prejudice to refiling; and that defendants' Motion to Stay (Dkt. 22) is DENIED.

            ___s/ J. Thomas Marten_____
            J. THOMAS MARTEN, JUDGE